UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PAUL A. WILLIAMS,

        Plaintiff,

       v.

ILLINOIS DEPARTMENT OF
CORRECTIONS,

        Defendant.

Case No. 05-cv-4227-JPG

**MEMORANDUM AND ORDER**

     This matter comes before the Court on the motion for summary judgment filed by

defendant Illinois Department of Corrections ("IDOC") (Doc. 10).  Plaintiff Paul A. Williams

("Williams") has responded to the motion (Doc. 14), and IDOC has replied to that response

(Doc. 15).

**I.**     **Summary Judgment Standard**

     Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court

must construe the evidence in the light most favorable to the nonmoving party and draw all

reasonable  inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986); *Spath*, 211 F.3d at 396.  This standard is applied with special scrutiny in cases that

turn on issues of intent and credibility.  *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d

687, 692 (7th Cir. 2000).  Where the moving party fails to meet its strict burden of proof, a court

cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II.    Facts

Viewed in the light most favorable to and drawing all inferences in favor of Williams, the evidence establishes the following relevant facts.

Since 2000, Williams worked as a youth supervisor for IDOC at the Illinois Youth Correctional Facility in Murphysboro, Illinois ("IYC-Murphysboro").  During his employment, Williams had always performed his job in a satisfactory manner and, although there were times he was unhappy working there, in the fall of 2004 Williams was happy in his job.

Williams's employment with IDOC was governed by a collective bargaining agreement. To implement rights guaranteed under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the collective bargaining agreement provided for Family Responsibility Leave for up to one year.  An employee requesting Family Responsibility Leave was required to request

2

the leave in writing reasonably in advance of the leave unless it was an emergency and to provide the purpose of the leave and the expected duration of the absence.  On at least two occasions, IDOC gave Williams a packet explaining his rights under the FMLA.

In the fall of 2004, Williams's mother became ill from kidney failure, obesity, high blood pressure and diabetes, and in October 2004 on her doctor's advice, Williams determined that he needed to care for her in her Ohio home for an undetermined period of time.  His sister had been caring for her up until that time, but she was in the middle of a career change and needed to devote more time to her new career and less time to caring for their mother.

On November 1, 2004, Williams met with Warden William Kilquist ("Kilquist") and told him that his mother was very sick and might have to go on kidney dialysis and that her doctor had said she needed constant care.  Williams told Kilquist he felt he needed to take leave from work to be with her.  Because Williams did not have sufficient leave time accrued to take the leave he needed, Kilquist told him his only option was to resign.  Kilquist also told Williams that he would provide a positive letter of recommendation and that his job at the IYC-Murphysboro would be there for him if he ever wanted to return.  Neither Williams nor Kilquist mentioned Family Responsibility Leave or the FMLA.

Relying on Kilquist's assessment of his options, on November 2, 2004, Williams turned in his resignation letter stating that his resignation would be effective November 15, 2004, the end of the pay period.  The letter did not mention that Williams was resigning to care for his ailing mother.  IDOC human resources representative Pam Wilkey ("Wilkey") completed the necessary forms, indicating that Williams was resigning in order to move to Ohio, and forwarded Williams's letter and the paperwork to IDOC's central office for processing.  That evening, Williams reviewed his employee handbook and was reminded of his rights under the FMLA.

3

The following day, November 3, 2004, Williams met with Wilkey and orally requested that his resignation be withdrawn and that he be allowed to take leave under the FMLA.  Wilkey told him it was too late to rescind his resignation because the paperwork had already been sent to the central office and that it was too late to request FMLA leave.  Williams never submitted any written request for Family Responsibility Leave or leave under the FMLA and never disclosed to Kilquist or Wilkey details about his mother's illness other than that she might have to go on dialysis.

Although it is unclear when IDOC received Williams's resignation and when the IDOC director finally approved it, IDOC's central office actually entered Williams's resignation in to its computer records on November 20, 2004.

Williams tried unsuccessfully to grieve the acceptance of his resignation but his union refused to support him.  He also tried unsuccessfully to get reinstated to his old position.  After November 15, 2004, Williams called Wilkey to find out again if he could rescind his resignation and take FMLA leave, and she told him that it was too late because the IDOC director had signed his termination form.

On December 28, 2005, Williams filed this lawsuit alleging that IDOC violated the FMLA's prohibitions on interfering with, restraining or denying the exercise of his rights under the act, and on discharging him in retaliation for asserting his rights under the act.  *See* 29 U.S.C. § 2615(a)(1) & (2).

In the pending motion for summary judgment, IDOC argues that it did not deny Williams's substantive rights under the FMLA because he never followed the proper procedures to request those rights, that it did not interfere with Williams's exercising his substantive rights because it was not on notice that FMLA rights might be at issue and that it did not discharge

4

Williams in retaliation for exercising his FMLA rights.

In response, Williams maintains that IDOC's arguments are irrelevant.  He believes that before ever getting to the question of whether he was entitled to FMLA leave or used the proper procedures to request it the Court must decide whether IDOC responded lawfully to his request for leave to care for his ailing mother.  He contends that when he spoke to Kilquist, he put IDOC on notice that he could be entitled to FMLA leave and that IDOC then failed to respond appropriately and instead interfered with his FMLA rights by misleading him into believing the only option that would enable him to care for his mother was for him to resign.  He also contends that IDOC retaliated against him after learning he wanted to take FMLA leave by failing to allow him to rescind his resignation in light of Kilquist's misleading statements.

III.   **Analysis**

A.   <u>Statutory and Regulatory Overview</u>

In general, the FMLA provides leave for qualified employees who must be absent from work for family or medical reasons.  29 U.S.C. § 2601 *et seq*.;  *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir. 1997).  Specifically, the FMLA seeks to provide up to twelve weeks employment leave within a twelve-month period for an eligible employee who is having a child or adopting a child, who suffers from a serious health condition or who needs to care for a family member who suffers from a serious health condition.  29 U.S.C. § 2612(a)(1)(A)-(D).  Employees are eligible for FLMA leave if they meet tenure and working hour requirements, 29 U.S.C. § 2611(2)(A).  No party seriously disputes that Williams met the eligibility requirements and that his mother had a serious health condition.

While the FMLA provides employees with substantive rights to such leave, it also prohibits employers from interfering with, restraining, or denying its employees' exercise of or

5

the attempt to exercise those substantive rights, 29 U.S.C. § 2615(a)(1), from discharging or

otherwise discriminating against anyone for opposing practices that are unlawful under the

FMLA, 29 U.S.C. § 2615(a)(2), and from discriminating against anyone for instituting or

participating in FMLA proceedings or inquiries, 29 U.S.C. § 2615(b).  Courts construe the latter

two provisions to prohibit retaliation for the exercise of FMLA rights.  *Kauffman v. Federal*

*Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005);  *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496,

503 (7th Cir. 2004).

 In order to claim FLMA leave to care for a family member receiving foreseeable,

planned medical treatment, an employee must give at least 30-days advance notice to his

employer.  29 U.S.C. § 2612(e)(2)(B);  29 C.F.R. § 825.301(a).  If 30-days notice is not possible,

the employee must provide as much notice as practicable.  29 U.S.C. § 2612(e)(2)(B);  29 C.F.R.

§ 825.301(a).  Notice minimizes the disruptive effect of an employee's absence and "enables an

employer to keep its business operating smoothly by bringing in substitutes or hiring temporary

help."  *Gilliam v. United Parcel Serv.*, 233 F.3d 969, 971 (7th Cir. 2000);  *see Aubuchon v.*

*Knauf Fiberglass, GmbH*, 359 F.3d 950, 951 (7th Cir. 2004).  If an employee does not give

adequate notice before taking leave, the employer may delay the commencement of the FMLA

leave period for 30 days.  29 C.F.R. § 825.304(b).  The notice must be "sufficient to make the

employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and

duration of the leave."  29 C.F.R. § 825.302(c).  An employer may require an employee to

comply with its "usual and customary notice and procedural requirements for requesting leave."

29 C.F.R. § 825.302(d);  *see Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir.

2002) (policy terminating employees for failure to call in on three consecutive scheduled work

days);  *Gilliam*, 233 F.3d at 971 (policy that employee must tell supervisor no later than the

6

beginning of the third working day of leave how much more time he will be out).  However, it may not "disallow or delay an employee's taking FMLA leave if the employer gives timely verbal or other notice" regardless of whether the notice complies with its usual and customary requirements.  29 C.F.R. § 825.302(d).

Once an employee gives notice, it is then incumbent on the employer to determine whether the employee's leave is properly taken under the FMLA and to notify the employee of its determination.  *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 310-11 (7th Cir. 2006) 29 C.F.R. § 825.208(a);  *see* 29 C.F.R. § 825.302(c) ("The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken.").  If the employer has doubts about whether a serious health condition exists, it may require the employee to provide certification from a health care provider, 29 U.S.C. § 2613(a) 29 C.F.R. § 825.305(a), and may require the employee to obtain a second opinion at the employer's expense, 29 U.S.C. § 2613(c); 29 C.F.R. § 825.307(a)(2).  *See Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004) (stating that proper notice from employee seeking leave "trigger[s] the employer's duty to request such additional information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement.").

B.    Unlawful Interference

IDOC asks the Court for summary judgment on Williams's claim that it violated the FMLA's prohibitions on interfering with, restraining or denying the exercise of, or the attempt to exercise, his rights to leave under the FMLA.  *See* 29 U.S.C. § 2615(a)(1);  29 C.F.R. § 825.220(a)(1).  "'Interfering with' the exercise of an employee's rights would include . . . discouraging an employee from using [FMLA] leave."  29 C.F.R. § 825.220(b);  *see Thomas v.*

7

*Pearle Vision, Inc.*, 251 F.3d 1132, 1138 (7th Cir. 2001).

IDOC argues that Williams was not entitled to FMLA leave because he never gave IDOC adequate notice that he needed Family Responsibility Leave, IDOC's policy to implement its employees' FMLA rights.  It notes that the collective bargaining agreement governing Williams's employment required him to request leave in writing reasonably in advance of the leave unless it was an emergency and to provide the purpose of the leave and the expected duration of the absence.  IDOC points out that Williams's discussions with Kilquist and Wilkey were oral and that his written letter of resignation did not contain any mention of a family situation for which leave was needed or an actual request for leave.  It further notes that Williams's termination paperwork, which Williams signed, simply stated that he was resigning to move to Ohio.  Further, aside from Williams's non-compliance with the collective bargaining agreement, IDOC contends that Williams never gave it enough information to place it on notice that he might be entitled to FLMA leave and did not give 30-days advanced notice.  IDOC believes since Williams never made a proper request for FMLA leave or put IDOC on notice that he might need FLMA leave, he was never entitled to it and IDOC could not have interfered with his taking it.  It maintains that Williams's resignation was completely voluntary and that he first sought FMLA leave *after* submitting his letter of resignation, when it was too late to do anything about it, and even then did not provide information about his mother's health condition.

Williams believes that IDOC's arguments are misplaced and premature.  He contends that IDOC initially failed to notify Williams of his FMLA rights, so the adequacy of his request is not even an issue.

The Court believes a reasonable jury could find IDOC interfered with Williams's attempt to exercise his rights under the FMLA even if he did not give proper notice.  It is true that an

employer may require an employee to comply with its neutral policies or collective bargaining agreement provisions for giving notice.  29 C.F.R. § 825.302(d);  *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002);  *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 971 (7th Cir. 2000);  *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 714 (7th Cir. 1997).  In this case, the collective bargaining agreement required advance written notice along with some minimal details about why the leave was needed and how long it would be.  Williams did not technically comply with these rules, but this failure it likely attributable to IDOC's interference with Williams's attempt to take FMLA leave even before he got to the stage of officially submitting a proper request.

Williams's conversation with Kilquist on November 1, 2004, was sufficient under the FMLA to put IDOC on notice that the FMLA might be in play.  As noted earlier, an employee first bears the burden of "provid[ing] at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave."  29 C.F.R. § 825.302(c).  He need not mention the FMLA by name so long as he, "place[s] the employer on notice of a probable basis for FMLA leave," and "give[s] the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave."  *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004); *see Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 311 (7th Cir. 2006) (employer entitled to notice that would inform it that FMLA may apply);  29 C.F.R. § 825.208(a)(2).  Simply requesting leave is insufficient because it does not give the employer notice that the FMLA is involved.  *See Aubuchon*, 359 F.3d at 952 (husband's request to stay home with his pregnant wife until she gave birth was insufficient to alert employer that FMLA could be involved).  Even requesting leave explicitly for illness is not sufficient because most employee sicknesses are

9

brief and do not qualify as serious health conditions justifying FMLA leave.  *See Phillips*, 450

F.3d at 311-12 (citing *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1009 (7th Cir. 2001)).

Neither will the length of an absence by itself give an employer adequate notice that the FMLA

may apply.  *Phillips*, 450 F.3d at 311.  In contrast, a husband's request to stay home with his

pregnant wife *because she is having complications from her pregnancy* would be sufficient to

notify the employer that the leave may qualify under the FMLA.  *Aubuchon*, 359 F.3d at 953.

Even a dramatic change in an employee's behavior could be sufficient to alert an employer that

an employee suffers from a serious health condition for which FMLA leave would be

appropriate.  *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381-82 (7th Cir. 2003) (noting that

employee's collapsing on the job or breaking an arm could be sufficient to give employer notice

of FMLA involvement and holding that model employee's sudden pattern of sleeping on the job

and absences could alert employee to FMLA involvement).

      In this case, Williams's statements to Kilquist on November 1, 2004, were sufficient to

notify IDOC that there was a probable basis for FMLA leave.  The evidence shows Williams

mentioned that his mother was very ill and may need dialysis and that he was entertaining a

move of several hundred miles to care for her for a period longer than a week (the paid leave he

was due).  There should have been no mistake in Kilquist's mind that the FMLA rights might

have been at issue.  Kidney disease requiring dialysis clearly qualifies as a serious health

condition, 29 C.F.R. § 825.114(a)(2)(v), and Williams was clearly inquiring about leave to care

for his mother suffering from kidney disease.  The fact that he was entertaining a major move to

care for an elderly parent should have reinforced the seriousness of her health condition and the

notion that FMLA rights might be involved.  Even if Williams had not specifically mentioned

dialysis, a reasonable jury could believe that IDOC should have known FMLA rights were at

issue based on Williams's statement that his elderly mother was very sick, the expected duration of the leave, and his willingness to make a major move to care for her.  This was not a situation where Williams's request could have been mistaken for a request for leave to tend to a minor sickness.

Nevertheless, in response, Kilquist provided Williams with false information.  Whether intentionally or not, he omitted any reference to the possibility of FMLA leave and incorrectly told Williams his only option was to resign.  Effectively, this was a preemptive denial of FMLA leave without adequate investigation into a situation where it was highly likely that FMLA leave would have been warranted – certainly discouraging Williams from attempting to use the leave. IDOC cannot now fault Williams with failing to make a sufficient FMLA request after it effectively informed him he was not entitled to FMLA leave.  It is also likely that had Kilquist properly informed Williams he would have been able to consult his employee handbook or collective bargaining agreement and prepare a proper leave request.  Indeed, Williams started down this course when he sought to revoke his resignation.  Further, the fact that Williams was able to give 15-days notice indicates that he did not need to care for his mother immediately and that he may have also been able to work with his sister to delay his arrival in Ohio for 30 days in order to comply with IDOC's and the FMLA's notice timing requirements.

Williams also alleges that IDOC interfered with his attempt to use his FMLA rights by refusing to allow Williams to rescind his resignation and allowing him to be terminated.  The Court believes that there is insufficient evidence to show that such a refusal, by itself, constituted unlawful interference with the exercise of Williams's FMLA rights.  However, in combination with the fact that Williams's resignation was procured after a misrepresentation that could demonstrate an animus toward FMLA leave, the Court believes a reasonable factfinder could

conclude that the refusal to allow him to withdraw his resignation was part of a continuing interference with Williams's FMLA rights.

In sum, a reasonable jury could find that Kilquist's false information that resignation was Williams's only option served to discourage Williams from claiming FMLA leave to which he likely would have been entitled and that IDOC's failure to reinstate him may have exacerbated that interference.  This violates the FMLA's prohibition on interfering with the exercise of substantive rights under the act, *see* 29 U.S.C. § 2615(a)(1), and the Court must therefore deny IDOC's motion for summary judgment on Williams's interference claim.[1]

C.   <u>Unlawful Discharge</u>

IDOC asks the Court for summary judgment on Williams's claim that it violated the FMLA's prohibitions on discharging Williams in retaliation for trying to claim FMLA benefits. *See Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005);  *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).  Williams believes that in retaliation for asserting his right to FMLA leave, he was effectively discharged when IDOC refused to allow him to rescind his resignation procured through Kilquist's false information regarding his entitlement to FMLA leave.

IDOC argues that it could not have discharged Williams in retaliation for exercising his rights under the FMLA because (1) he resigned voluntarily and (2) he never took FMLA leave.

---

[1]The Court does not discuss Williams's estoppel argument because it does not understand why he is advancing it.  A party can use an estoppel theory to hold an opponent to a misrepresentation that the party reasonably relied on to his detriment.  *See Dormeyer v. Comerica Bank-Ill.*, 223 F.3d 579, 582 (7th Cir. 2000).  In this case, Williams does not seek to hold IDOC to Kilquist's misrepresentations but instead seeks to show that those representations in and of themselves constituted interference with Williams's rights.

IDOC's argument on the first point is too simplistic.  Although Williams's termination was pursuant to his request, however misinformed that request was, it is undisputed that IDOC terminated Williams's employment.  This is a discharge and falls under the FMLA's prohibitions if it was retaliatory.

As for its second point, IDOC is incorrect in asserting that retaliatory discharge can occur only when an employee actually takes FMLA leave but not when he tries to take it and is terminated before he can do so.  Such a retaliation claim is identical in substance to an interference claim – terminating someone in retaliation for attempting to claim FMLA benefits is really the same as terminating him to interfere with his exercising those rights – and Williams may call it "retaliation" if he so chooses.  *See, e.g., Larson v. Endodontic & Periodontic Assocs., Ltd.*, No. 04 C 7305, 2006 WL 2038600, *8 (N.D. Ill. July 17, 2006).  This distinction does not really make a difference in the end because the crux of Williams's claim is that his discharge was wrongfully procured.  *See Kauffman*, 426 F.3d at 885 ("What is at stake here is a claim for wrongful discharge, and Kauffman may recover damages or equitable relief for that claim under 29 U.S.C. § 2617 on either an interference/entitlement or a discrimination/retaliation theory." (footnote omitted)).

For this reason, the Court views Williams's claim as a single claim that IDOC interfered with his FMLA rights and that that interference resulted, albeit indirectly, in his discharge.  There is no need to frame Williams's single claim under two separate but substantively identical theories.  Thus, for the same reasons the Court denied IDOC's summary judgment with respect to Williams's interference claims, it also denies it with respect to his "retaliation" claims.  *See* Part III.B.

13

**IV.     Conclusion**

For the foregoing reasons, the Court **DENIES** IDOC's motion for summary judgment

(Doc. 10).

**IT IS SO ORDERED.**
**DATED:  March 9, 2007**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

14